E-FILED
Friday, 14 March, 2008  09:43:51 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| NILAY SHAH and MIHIR, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-1042 |
| | ) | |
| AMERICAN BOTTLING CO., Inc. | ) | |
| | ) | |
| Defendant. | ) | |

# O P I N I O N   A N D   O R D E R

Before the Court is a Motion to Dismiss and for a More Definite Statement filed by

Defendants American Bottling. [Doc. 7.] Defendant has also filed an accompanying Memorandum.

[Doc. 8.]  Plaintiff has filed a Response. [Doc. 10.]  For the following reasons, the Motion is

GRANTED IN PART and DENIED IN PART.

## I.
## BACKGROUND

Plaintiff, Nilay Shah, was born in India and is the sole shareholder and operator of Mihir,

Inc., a corporation operating a CITGO gasoline station located in Morton, Illinois.  According to

the Complaint, [Doc. 1] Plaintiff Mihir, Inc. contracted with Defendant, American Bottling Co.,

Inc., to purchase wholesale soft drinks that would be sold at Plaintiffs' gas station.  Under the

contract, Defendant would supply Plaintiffs with 7-Up, A & W Root Beer, and Dr. Pepper every

one or two weeks, as needed, with payments to be made at the time of delivery.

Plaintiffs allege that from September 5 through December 29, 2005; March 9 through

August 30, 2006; and September 18 through December 13, 2006, Defendant refused to deliver

soft drinks to Plaintiffs because of Plaintiffs' ethnicity.  During that time, Defendant continued to

deliver soft drinks to competing gas stations that were within the immediate vicinity of Plaintiffs' store.

Plaintiffs have now filed a one count Complaint under 42 U.S.C. § 1981 alleging that Defendant refused to perform its contract because of Plaintiff Shah's ethnic origin. Plaintiff Shah alleges that his business, Mihir, Inc., lost profits of approximately $18,000. In addition, he alleges that he personally has suffered emotional distress and seeks a total of $100,000 in compensatory damages. Plaintiffs also seek $50,000 in punitive damages as well as an injunction barring such action in the future and attorney's fees under 42 U.S.C. § 1988. Defendant has now moved to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6) and requested a more definite statement pursuant to Federal Rule of Civil Procedure 12(b)(3).

## II.
## LEGAL STANDARD

When considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must view the complaint in the light most favorable to the plaintiff and the complaint's well-pled factual allegations must be accepted as true. Williams v. Ramos, 71 F.3d 1246, 1250 (7th Cir. 1995). Therefore, a complaint can only be dismissed if a plaintiff cannot prove any set of facts upon which relief can be granted. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429-30 (7th Cir. 1996). However, the Court is not bound by a plaintiff's legal conclusions. Baxter by Baxter v. Vigo County School Corp., 26 F.3d 728, 730 (7th Cir. 1994). The province of Rule 12(b)(6) motions is to question the availability of a legal formula justifying relief on the alleged facts, not to test or determine the facts themselves. Maple Lanes, Inc. v. Messer, 196 F.3d 823, 824-25 (7th Cir. 1999).

### III.
### ANALYSIS

Plaintiffs have brought a claim under § 1981 which states as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

Based on this statute, Plaintiffs allege that Defendant violated Plaintiffs' rights by refusing to perform on their contract because of Plaintiff Shah's ethnic origin.

Defendant presents two separate arguments for dismissing this case: (1) Plaintiffs lack standing; and (2) even if they have standing, Plaintiffs have not alleged a valid form of discrimination under § 1981. Neither of these arguments persuades this Court to dismiss this case.

### 1. Standing

Defendant alleges that Plaintiffs lack standing. According to Defendant, the contractual relationship at bar is alleged to have been between two corporate entities - Mihir and American Bottling. Defendant points to Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8 (1st. Cir 1999), and argues that any alleged illegal discrimination in this case was suffered by Plaintiff Shah. Shah was not the contracting party and therefore he is without standing to bring a § 1981 action

on his own behalf or as the sole shareholder of Mihir to redress any injury suffered by him or the corporation occasioned by Defendant's refusal or failure to deliver soft drink products as required under it contract with Mihir. (Doc. 8 at 3.)  The Court agrees.  As observed in <u>Danco</u>, "Nothing in section 1981 provides a personal claim, so far as its language is concerned, to one who is merely affiliated as an owner or employee with a contracting party that is discriminated against by the company that made the contract."  <u>Id.</u> at p. 14.

In <u>Danco</u>, the First Circuit addressed a claim by an independent contractor who cleaned a parking lot for Wal-Mart.  The contractor, a Mexican-American, had been the victim of racial taunts and harassment by Wal-Mart employees while cleaning the parking lot.  The contractor brought suit individually and through his contracting business, Danco, inc., alleging a somewhat novel theory of liability.  He alleged under § 1981 that he was subjected to a hostile work environment.  A hostile work environment claim is typically brought by an employee under Title VII, 42 U.S.C. § 2000e-2.  However, because he was an independent contractor, the plaintiff was not an employee entitled to Title VII protection.  Instead, he alleged that by subjecting him to a hostile work environment, Wal-Mart had impinged upon his right to enjoy the same benefits of a contract that would be enjoyed by other racial groups in violation of § 1981.  After a jury verdict for the plaintiff, the First Circuit allowed on appeal that such a claim could be viable.  However, in dicta the court noted that there was a strong argument which the parties never raised for entering a directed verdict in Wal-Mart's favor.  The court noted that only the contractor's business could have a viable claim, because only the business was a party to the contract.  <u>Danco</u>, 178 F.3d at 14-15.  The contractor himself could not have a claim because he was not a party to the contract.  Furthermore, the court noted that the damages suffered were due to "emotional harm" suffered by the contractor and there was no evidence of damages suffered by

the business.  Since the business was the only party to the contract, and the business had not

suffered any damages, neither the contractor nor his business could recover under § 1981.  In

fact, the First Circuit was constrained not to apply the plain error doctrine to reverse the verdict

for the contractor only because it found that both parties had "affirmatively consented to the

district court's instructions to treat Guiliani (the contractor) and Danco (his corporation)

interchangeably."  Id. at p. 15.

In addition to Danco, Defendant cites several other cases to support its contention that

Plaintiff Shah does not have standing to sue under § 1981 to redress the injury to his corporation

or to himself as the sole shareholder.  Gregory v. Mitchell, 634 F.2d 199, 201 (5th Cir. 1981)

(Individual shareholder's actions under § 1981 dismissed for lack of standing); Calderon, et al. v.

Southwestern Bell Mobile Systems, LLC, 390 F. Supp. 2d 714, 717 (N.D. Ill. 2005) (Individual

§ 1981 claims by president, owner, and operator of corporation dismissed with prejudice); and

Searcy v. Houston Lighting & Power Company, 907 F.2d 562, 564-565 (5th Cir. 1990)

(Dismissal of individual § 1981 claims to redress corporate injuries upheld on appeal).  As a

result, this Court holds that an individual shareholder, officer, or employee of a corporation does

not have standing to redress an injury to the corporation.  Plaintiffs do not argue that Plaintiff

Shah was a party to the contract and there is not an allegation that Plaintiff Shah was a party to

the contract.  As a result, Plaintiff Shah lacks standing and will be dismissed from this case.

However, the Court disagrees with Defendant's contention that Plaintiff Mihir does not

have a viable § 1981 claim.  Unlike Danco, there is an allegation that the corporation at issue

sustained damages in the form of lost profits.  Plaintiff could very well prove this allegation

through evidence.  As a result, Plaintiff Mihir still has standing to pursue a claim.

**2. Discrimination**

Defendant acknowledges that § 1981 prohibits discrimination based upon race. However, Defendant argues that Plaintiff's claim must be dismissed because § 1981 does not protect against discrimination based up a plaintiff's nation of origin.

In <u>Saint Francis College v. Al-Khazraji</u>, 481 U.S. 604, 613 (1987), the Supreme Court held that, at a minimum, § 1981 protects against discrimination because an individual is "genetically part of an ethnically and physiognomically distinctive sub-grouping of *homo-sapiens*." However, "a distinctive physiognomy is not essential to qualify for § 1981 protection." <u>Id.</u> Thus, while a plaintiff cannot sustain a claim for being born in a specific country or region, he can sustain a claim for having ethnic or genetic traits that originate from a specific place or region. So, for example, if an Arab plaintiff could show that "he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981." <u>Id.</u>

In the case at bar, Plaintiff states that he was born in India and lived there until he was eighteen. Defendant argues that this is not enough. Namely, Plaintiff should have stated that he was born *an Indian*, rather than just stating he was born *in India*. This is a distinction that could make a difference in determining if the ethnicity requirement is pled given today's mobile world where it is not farfetched to have persons of one race being born and living in a foreign country. A very plausible example would be of a white person of British lineage being born and raised in India. It certainly would have been easy for Plaintiff Shah to avoid opening this racial identity challenge by a direct statement of Indian ethnicity. However, at the pleading stage, where the Court views the allegations of the Complaint in the light most favorable to the plaintiff, is not a propitious time to decide the facts and this issue of Shah's ethnicity will be left for another stage

6

of trial.

Defendant also contends that Plaintiff Mihir does not have standing to sue under § 1981 unless it has acquired a racial identity either as a matter of law or by imputation.  See Thinkit Ink Information Resources v. Sun Microsystems, Inc., 368 F.3d 1053, 1057-59 (9th Cir. 2004).  The Court believes that Plaintiff Mihir's claim is within the zone of interests protected by § 1981. The essence of the discrimination claim underlying the Complaint is that Plaintiff Shah, an Indian, or his corporation of which he is the sole shareholder was discriminated against because of his ethnic origin.  Earlier in this Order, the Court denied standing to Plaintiff Shah on the ground that his corporation and not he was the victim of Defendant's discriminatory conduct.  It would indeed be an anomaly to deny standing to the corporation because it has "no racial identity and cannot be the direct target of the discrimination" while at the same time denying standing to the sole shareholder of the corporation on the sound ground that the injury was suffered by the corporation and not the shareholder.  See Thinkit at p. 1059.  Under the circumstances of this case, the Court believes that based on the facts as pled, Plaintiff Mihir has acquired an imputed racial social identity sufficient to give it standing to sue under § 1981.

Accordingly, Defendant's argument that Plaintiffs have not adequately pled a form of discrimination that is protected under § 1981 is without merit.

### 3. 12(e) Request

Defendant also requests that Plaintiffs be compelled to make a more definite statement under Rule 12(e).  Specifically, Defendant points out that in several portions of the Complaint, Plaintiffs allege that Defendant failed to abide by the contract.  (Doc. 1 at ¶ 7.)  Yet later in the Complaint, Plaintiffs allege that Defendant refused to contract with Plaintiffs.  (Doc. 1 at ¶ 16.) Specifically, Defendant wants a more definite statement to discover if Plaintiffs are either

alleging that there was a contract in place and Defendant allegedly breached the contract, or alleging that there was not a contract in place and Defendant allegedly refused to contract on the basis of Plaintiff Shah's ethnicity.

Plaintiffs respond by arguing that there was a contract in place and this is clearly stated under the Complaint. It appears that when Plaintiffs stated that Defendant "refused to contract," he was actually stating that Defendant refused to continue to supply soft drinks under this "as-needed" contract. According to Plaintiffs, Defendant can admit or deny the existence of the contract, but either way the case will require discovery.

Defendant is correct that there are inconsistencies within Plaintiffs' Complaint, and Plaintiffs might consider voluntarily amending the Complaint to avoid these inconsistencies. However, Rule 12(e) only requires a party to amend a complaint when an opposing party "cannot reasonably be required to frame a responsive pleading...." Defendant has clearly been put on notice about Plaintiffs' claim, and they do not require an additional Complaint to deny the existence of the alleged contract. They are clearly capable of framing a responsive pleading based on the current allegations. Rule 12(e) is not meant to serve as a substitute for discovery. Woo v. Gamze, No. 91-C-2812, 1992 WL 59103 (N.D. Ill. March 16, 1992); Brill v. Central States, Southeast and Southwest Areas Pension Fund, No. 82 C 7973, 1985 WL 1448, at *3 (N.D. Ill. May 22, 1985). And, based upon Plaintiffs' affirmation to the Court, discovery will be needed to determine if a contract actually existed.

**IV.**
**CONCLUSION**

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.  Plaintiff Shah is dismissed for lack of standing. This matter is referred to the Magistrate Judge for Pretrial Proceedings.

ENTERED this   13th    day of March, 2008.

_____s/ Joe Billy McDade_____
Joe Billy McDade
United States District Judge

9