# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| NILAY SHAH, *and* MIHIR, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-cv-1042 |
| ) | |
| ) | |
| AMERICAN BOTTLING CO., INC., ) | |
| ) | |
| Defendant. ) | |

## O P I N I O N  &  O R D E R

On May 26, 2009, Defendant filed its Motion for Summary Judgment. (Doc. 17). Plaintiff's Response was due by June 19, 2009. On June 16, 2009, Plaintiff filed for an extension of time (Doc. 24), which was granted; Plaintiff's response deadline was extended to July 14, 2009. (Text Only Order of June 19, 2009). On July 14, 2009, Plaintiff again requested an extension of time to file a response. (Doc. 26). Defendant's counsel opposed this extension. (Doc. 28). This Court granted the second motion to extend Plaintiff's response deadline to August 17, 2009, but cautioned Plaintiff that "Plaintiff's counsel will be allowed no further extensions of the response deadline, absent extraordinary circumstances." (Text Only Order of July 24, 2009). On August 18, 2009, after the twice-extended response deadline had passed, Plaintiff filed its Motion for Leave to File Response to Defendant's Motion for Summary Judgment. (Doc. 30). Defendant filed an Objection to this most recent motion on August 21, 2009. (Doc. 31). For the reasons

stated below, Plaintiff's Motion for Leave to File Response to Defendant's Motion for Summary Judgment is denied, and Defendant's Motion for Summary Judgment is granted.

### PLAINTIFF'S MOTION FOR LEAVE TO FILE UNTIMELY RESPONSE

Plaintiff's instant Motion for Leave to File, which in effect seeks an extension of time, is in violation of Local Rule 6.1, which provides "Any party seeking an extension of time for any reason must file a motion for such extension before the original deadline. Motions filed out of time will be denied, unless the presiding judge determines that such denial would create a substantial injustice. All such motions. . .must state whether opposing counsel has objection to the motion." Given that Plaintiff's Motion for Leave to File related to a motion for summary judgment, Local Rule 7.1(D) applies, as well. Local Rule 7.1(D) particularly notes that extensions of time for the filing of motions related to summary judgment are disfavored, and "such motions may be summarily denied unless they are filed within the original time as allowed by this rule or by the scheduling order."

Here, Plaintiff's counsel did not file his motion until after the original deadline had expired, which had itself been extended twice at Plaintiff's counsel's request, and he did not state whether opposing counsel had an objection to it. This is in violation of Local Rule 6.1. Given the previous extensions, the forseeability of the problems tendered as excuses by Plaintiff's counsel in his motion,[1] and the disfavor with which the Local Rules regard motions for extension of time to file

---

[1] Plaintiff's counsel asserts that he was delayed in filing because of "the time involved in reviewing the record citations with his law clerk and inserting the statement of facts in the body of the response and compilation of the exhibits." (Doc. 30 at 1).

2

Responses to Motions for Summary Judgment, the Court finds that, under the Local Rules, there will be no substantial injustice in refusing to allow Plaintiff's counsel to file his Response late.

This decision to enforce the Local Rules is well within the discretion of the Court. "In exercising discretion regarding enlargements of time, courts should be mindful that the rules are 'intended to force parties and their attorneys to be diligent in prosecuting their causes of action.' Deadlines, in the law business, serve a useful purpose and reasonable adherence to them is to be encouraged." Spears v. City of Indianapolis, 74 F.3d 153, 157 (7th Cir. 1996) (quoting Geiger v. Allen, 850 F.2d 330, 331 (7th Cir.1988)). When he missed the most recent deadline, Plaintiff's counsel was on his second motion for extension of time to file his response to Defendant's Motion for Summary Judgment; he had been allowed two months beyond the original deadline of August 17, 2009. This Court exercised its discretion to grant Plaintiff's previous two motions for extension of time, though they were also based on routine time-management problems entirely within the control of Plaintiff's counsel, not on any unforeseeable or extraordinary occurrences. However, the Court cautioned that no further extensions would be granted.

In light of this history, the Court now denies Plaintiff's Motion for Leave to File Response to Defendant's Motion for Summary Judgment. The Seventh Circuit has repeatedly held that a district court is within its discretion to enforce the deadlines set by Local Rules and scheduling orders, including as to summary judgment motions, where the failure to respond is deemed an admission, by refusing to allow late filings. Raymond v. Ameritech Corp., 442 F.3d 600 (7th Cir.

2006); Gonzalez v. Ingersoll Mill. Mach. Co. 133 F.3d 1025 (7th Cir. 1998); Reales v. Consolidated Rail Corp., 84 F.3d 993 (7th Cir. 1996); Spears, 74 F.3d 153; Wienco, Inc. v. Katahn Associates, Inc., 965 F.2d 565 (7th Cir. 1992). Refusing to excuse even an unforeseeable one-day delay is within the discretion of the trial court. Reales, 84 F.3d at 997; Spears, 74 F.3d at 156-57. Here, Plaintiff's counsel's delay was not due to unforeseeable circumstances, but his own failure to properly judge the amount of time needed for the Response.

Plaintiff's counsel was warned on July 24, 2009, that he would be allowed no further extensions absent extraordinary circumstances. Raymond, 442 F.3d at 607-08 (district judge not required to warn counsel that previous extension was final extension before rejecting untimely response to motion for summary judgment). He has not shown extraordinary circumstances or even good cause for his delay in filing this most recent motion: he merely states that, though he had "substantially completed the Response on August 17, 2009," he was delayed in filing because of "the time involved in reviewing the record citations with his law clerk and inserting the statement of facts in the body of the response and compilation of the exhibits." (Doc. 30 at 1). Given the July 24 warning by the Court, this is not excusable neglect.

As noted by our Circuit Court, "[w]hen parties wait until the last minute to comply with a deadline, they are playing with fire." Spears, 74 F.3d at 157. Failing to allow sufficient time to check citations, draft key components of a filing, and compile exhibits, especially considering the two months of extensions already allowed and the warning from the Court, is indeed "playing with fire." These are

4

completely foreseeable, indeed necessary, parts of filing a Response to a Motion for Summary Judgment, and a competent attorney will plan on the need to complete these tasks. This Court will not allow its deadlines or Local Rules to be ignored so cavalierly, especially when an attorney has been made aware that he will be given no more extensions. Therefore, Plaintiff's Motion for Leave to File Response to Defendant's Motion for Summary Judgment is denied; Plaintiff may not file its untimely Response to Defendant's Motion for Summary Judgment.

<b><u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u></b>

**I.    Effect of Plaintiff's Failure to Timely File its Response to Defendant's Motion for Summary Judgment**

Local Rule 7.1(D) provides that the Court may strike any filings that do not comply with the Rule. As explained above, Plaintiff has failed to comply with Local Rule 7.1(D) by its belated attempt to file its Response to Defendant's Motion for Summary Judgment. Therefore, the Court will strike Plaintiff's attempted untimely filing of its Response to Defendant's Motion for Summary Judgment. As there is no Response to Defendant's Motion for Summary Judgment, Plaintiff is deemed to have admitted the contents of Defendant's Motion for Summary Judgment, pursuant to Local Rule 7.1(D)(2), and the Motion for Summary Judgment will be decided by the Court on the record now before it. <u>Raymond</u>, 442 F.3d at 608; <u>Gonzalez</u>, 133 F.3d at 1030-31; <u>Reales</u>, 84 F.3d at 997; <u>Wienco</u>, 965 F.2d at 566-68.

**II.    Defendant's Motion for Summary Judgment**

"Strict enforcement of [Local Rules and deadlines] does not mean that a party's failure to submit a timely filing automatically results in summary judgment

for the opposing party." <u>Wienco</u>, 965 F.2d at 568. Instead, this Court must evaluate the merits of Defendant's Motion for Summary Judgment under the law ordinarily applicable to summary judgment. <u>Id</u>.

### A.    Background[2]

Between October 20, 2005, and June 2007, Mihir, Inc. operated a CITGO gas station and convenience store in Morton, Illinois. (Doc. 17 at 2-3). Nilay Shah was the sole shareholder of Mihir, Inc., as well as its president. (Doc. 17 at 2). Defendant American Bottling, Inc., supplied certain soft drinks to the CITGO store during this period. (Doc. 17 at 5-8). Defendant's salesperson, Gary DeLashmit, would visit the store periodically to determine whether additional supplies were needed, and, if so, would place an order for soft drinks to be delivered to the store. (Doc. 17 at 10-11). In order to ascertain the level of beverage supplies in the store, Mr. DeLashmit, would enter the walk-in cooler of the store and take a count of the remaining inventory there. (Doc. 17 at 11). Mr. DeLashmit, along with Paul Bersell, Defendant's branch manager, and Jake Grainger, Defendant's delivery person, gave affidavits testifying that the store's cooler was highly disorganized, such that it was difficult to enter it or see the product in order to take note of the

---

[2]    As discussed above, by failing to respond to Defendant's Motion for Summary Judgment, Plaintiff has admitted Defendant's statement of material facts contained in that Motion. That statement of facts is based upon deposition testimony from Mr. Shah and Kim DeWitt (an employee of Plaintiff's), and affidavits from Paul Bersell (Defendant's branch manager), Gary DeLashmit (Defendant's salesperson), and Jake Grainger (Defendant's delivery person), as well as Plaintiff's Initial Disclosures and Answers to Interrogatories, Plaintiff's corporate records, and Plaintiff's tax returns. (Doc. 18 (Appendix to Doc. 17)). Therefore, the facts recounted here are primarily drawn from the statement of facts contained in Defendant's Motion for Summary Judgment.

6

remaining American Bottling inventory among all the other products.  (Doc. 17 at 11-13; Def. Ex. 9; Def. Ex. 6; Def. Ex. 10).

Prior to incorporating Mihir, Inc., Mr. Shah operated the same CITGO location in Morton, with a partner, under the name of C.J. of Illinois.  (Doc. 17 at 13).  On behalf of C.J. of Illinois, in May 2004, Mr. Shah signed a contract with Defendant; this contract was to last for one year, contained only pricing and product-space terms, and did not specify a sales-call or delivery schedule.  (Doc. 17 at 13-14).  By its terms, this contract expired in May 2005.  (Doc. 17 at 14).  Mihir, Inc. came into existence on October 20, 2005, after C.J. of Illinois was dissolved, and Mr. Shah incorporated the new business alone under the new name of Mihir.  (Doc. 17 at 2).  Mr. Shah never signed a written contract with Defendant on behalf of Mihir, Inc., though Mr. DeLashmit brought him a price list that was honored by Defendant.  (Doc. 17 at 14-15).  Mr. Shah testified that Plaintiff had an oral contract regarding prices, based on this price list, with Defendant through Mr. DeLashmit.  In addition, he testified that Plaintiff had an oral contract with Mr. Bersell beginning in September 2006.  (Def. Ex. 2 at 211-13).

From March 9, 2006, until August 30, 2006, Plaintiff's store received no deliveries from Defendant, nor did Defendant's salesperson call on Plaintiff's store during that time.[3]  (Doc. 17 at 6-8, 12).  Mr. DeLashmit stopped visiting Plaintiff's store and thus placing orders for it during this time period because the store was highly disorganized, requiring a disproportionate amount of time and effort to

---

[3]   In his deposition, Mr. Shah indicated that Mr. DeLashmit did call on the store once during this period, but that he appeared to be drunk and Mr. Shah did not want him to enter the store.  (Def. Ex. 2 at 201-02).

7

service, and he did not have the time to service the store, given his other accounts. (Doc. 17 at 11-13).

Mr. Shah wrote a letter to Defendant in July 2006 complaining about the lack of service, but sent this to Defendant's post office box for receiving payments, rather than to Defendant's office. (Doc. 17 at 9). Mr. Shah later complained to Mike Bradley, the Monster Energy drink representative, about Defendant's lack of service, and Mr. Bradley relayed this concern to Paul Bersell, Defendant's branch manager. (Doc. 17 at 9). Shortly after Mr. Bersell heard of Mr. Shah's complaint, he visited Plaintiff's store to address the problem. (Doc. 17 at 9). After Mr. Bersell visited the store, sales calls and deliveries resumed on August 30, 2006, and Plaintiff had no more complaints about service from Defendant. (Doc. 17 at 9).

On February 22, 2007, Plaintiff Mihir and its sole shareholder, Mr. Shah, filed its Complaint against Defendant, alleging that Mr. DeLashmit, as well as Mr. Bradley, whom Mr. Shah mistakenly believed to be an employee of Defendant, had discriminatorily failed to make sales calls and place orders for American Bottling's soft drinks to be sold in Plaintiff's store. (Doc. 1). Mr. Shah, who was born and raised in India, alleged that Defendant had violated his freedom to contract under 42 U.S.C. § 1981 by discriminating against him on the basis of his race. Plaintiff's Complaint alleged several time periods during which Plaintiff claimed a discriminatory failure to service Plaintiff's store.[4] However, during Mr. Shah's

---

[4] Specifically, Plaintiff alleged in the Complaint that it did not receive deliveries, due to discrimination in violation of § 1981, from September 5, 2005 to December 29, 2005, from March 9, 2006 to August 30, 2006, and from October 16, 2006 to December 13, 2006.

8

deposition, it was clarified that the 25 weeks from March 9, 2006 to August 30, 2006 was the only period during which Plaintiff actually missed deliveries and attributed this nondelivery to discrimination.[5]  (Doc. 17 at 5-7; Def. Ex. 2 at 155-58).

Mr. Shah believed that racial discrimination was the reason that Defendant's deliveries to Plaintiff stopped during the spring and summer of 2006.  The root of this belief is the fact that, during this period, two neighboring "American-owned" stores, Casey's, a convenience store, and Yogi Liquors, were receiving regular deliveries from Defendant.  (Doc. 17 at 8).  Mr. Shah was not aware of the terms of the relationship between Casey's and Defendant, and has presented no evidence as to the relationship between either Casey's or Yogi Liquors and Defendant.  (Doc. 17 at 8).  Plaintiff has identified no statements, events, or other evidence that would indicate racial discrimination.

Mr. Shah was dismissed from the case on March 13, 2008, by this Court because he lacked standing to sue under § 1981.  (Doc. 12).  However, Plaintiff Mihir, Inc., was determined to have "acquired an imputed racial social identity [because of Mr. Shah's ownership] sufficient to give it standing to sue under § 1981."  (Doc. 12 at 7).  Defendant moved for summary judgment on May 26, 2009.

---

[5] Mr. Shah agreed in the deposition that, because the American Bottling records showed deliveries on October 8 and 25, November 17, and December 1 and 29, 2005, there were deliveries on those dates, thus conceding that he did receive deliveries during the first period identified in the Complaint. (Def. Ex. 2 at 143-44).
Likewise, Mr. Shah noted that he did not have any discrimination-based problems with American Bottling after Mr. Bersell visited the store in the summer of 2006. (Def. Ex. 2 at 183-84). He alleges that, on September 18, 2006, Defendant refused to perform on an alleged oral contract between Plaintiff and Mr. Bersell to deliver beverages to the store in preparation for Morton's pumpkin festival. (Def. Ex. 2 at 129-30). However, whatever the merits of this contract claim, Mr. Shah and Plaintiff have conceded that this nondelivery was not due to discrimination in violation of § 1981. (Doc. 17 at 6).

(Doc. 17). As discussed above, Plaintiff failed to respond to Defendant's Motion for Summary Judgment, so the Court will decide the Motion on the basis of the record before it, noting that Plaintiff has thus admitted to the facts as stated in the Defendant's Motion.

### B. Legal Standard

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Typically, all inferences drawn from the facts must be construed in favor of the non-movant, but the court is not required to draw every conceivable inference from the record. Smith v. Hope School, 560 F.3d 694, 699 (7th Cir. 2009). However, where the non-moving party has failed to respond to the Motion for Summary Judgment, "we depart from our usual posture of construing all facts in favor of the non-moving party; rather, we accept as true all material facts contained in" the moving party's statement of undisputed material facts. Johnson v. Gudmundsson, 35 F.3d 1104, 1108 (7th Cir. 1994) (citing Tobey v. Extel/JWP, Inc., 985 F.2d 330, 333 (7th Cir. 1993); Martin v. Consultants and Administrators, Inc., 966 F.2d 1078, 1084 (7th Cir. 1992)). "Even if the opposing party completely fails to respond to a summary judgment motion,…the court still must ascertain that judgment is proper 'as a matter of governing law.'" Id. at 1112.

### C. Discussion

As discussed above, Plaintiff is deemed to have admitted the statement of facts contained in Defendant's Motion for Summary Judgment. However, the Court

10

still must analyze whether, though there are no undisputed material facts, summary judgment for Defendant is appropriate as a matter of law. FED. R. CIV. P. 56(c). 42 U.S.C. § 1981, in pertinent part, provides that "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts…as is enjoyed by white citizens," including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a), (b).

Because § 1981 and Title VII claims are subject to "essentially identical" methods of proof, § 1981 plaintiffs must show either direct evidence of discrimination, or must proceed under the indirect approach of <u>McDonnell Douglas Corp. v. Green</u>. <u>McGowan v. Deere & Co.</u>, 06-cv-4003, 2009 WL 2901931, *2 (7th Cir. Sept. 11, 2009) (<u>citing</u> 411 U.S. 792 (1973)). Since Plaintiff has presented no direct evidence of discrimination,[6] <u>McDonnell Douglas</u>' burden-shifting approach

---

[6] "Direct evidence is evidence that, if believed, shows discriminatory conduct by the employer without reliance on inference or presumption, such as where there is an admission…that the decision was based on the prohibited animus. That may include circumstantial evidence, but such evidence 'must point directly to a discriminatory reason for the…action.'" <u>Elkhatib v. Dunkin Donuts, Inc.</u>, 493 F.3d 827, 829 (7th Cir. 2007 (internal citations omitted). Here, by failing to respond to Defendant's Motion for Summary Judgment, Plaintiff has admitted Defendant's statements that "The only basis for Plaintiff's claim of discrimination [are] his observations that his two competitors[,] which were other stores in the immediate area, Casey's and Yogi Liquors, got regular deliveries and they were 'American-owned' business[es]," and that "[t]here is no other basis for Plaintiff's belief of discrimination. There were no other situations, conversations, occurrences or statements that form the basis for the claim of discrimination." (Doc. 17 at 8). In addition, in his deposition, Mr. Shah admitted that there was no direct evidence of racial motivation. (Def. Ex. 2 at 185-86). Plaintiff has neither alleged nor testified to any statements or other actions that "point directly" to any racial animus, nor is

will apply. To make its prima facie case under this method of proof, Plaintiff must show that: (1) it belongs to a protected class; (2) it met Defendant's legitimate expectations with regard to an existing or potential contract between them; (3) it suffered an adverse action; and (4) similarly-situated non-protected businesses were treated more favorably. Elkhatib v. Dunkin Donuts, Inc., 493 F.3d 827, 830 (7th Cir. 2007). If Plaintiff is able to meet this burden, then Defendant must come forward with a legitimate, non-discriminatory reason for its action against Plaintiff. Id. At that point, the burden would shift back to Plaintiff to show that the given reason was merely a pretext for discrimination.[7] Id. "Notwithstanding the shifting burdens, [Plaintiff] bears the ultimate burden of persuading the trier of fact that [Defendant] intentionally discriminated against him on the basis of his race." McGowan, 2009 WL 2901931, *2.

Defendant argues that Plaintiff cannot make out the prima facie case under 42 U.S.C. § 1981 because (1) Plaintiff complains of national origin discrimination, which is not protected under § 1981; (2) there was no contract between the parties upon which to base a § 1981 claim; (3) Plaintiff cannot demonstrate the existence of similarly-situated businesses without Plaintiff's protected status that were treated more favorably than Plaintiff; and (4) even if Plaintiff is able to prove a violation of

---

there any other evidence in the record that suggests this. Therefore, Plaintiff must proceed under the indirect method of proof.

[7]   Among the facts that Plaintiff is deemed to have admitted is that "[t]he ethnic origin of Nilay Shah played no role in Mr. DeLashmit's decision to skip Plaintiff's location." (Doc. 17 at 12). This would seem to dispose of the entire matter, as a § 1981 plaintiff must show intentional discrimination in the making or servicing of contracts, and this statement indicates the absence of any intentional discrimination on the part of Defendant's agent. However, the Court will proceed with the § 1981 analysis, if only out of an abundance of caution.

§ 1981, Defendant is not liable for that violation. In addition, Defendant argues that, even if Plaintiff establishes a prima facie case under § 1981, (5) Defendant has come forward with a legitimate, non-discriminatory reason for its actions, which Plaintiff cannot show to have been a pretext for discrimination; (6) Plaintiff is not entitled to punitive damages; and (7) Plaintiff cannot prove any damages. The Court agrees that there was no contract as to the frequency of sales calls or deliveries between the parties upon which Plaintiff can base its § 1981 claim, and, alternatively, that even if Plaintiff were able to make out its prima facie case, Defendant has come forward with a legitimate, nondiscriminatory reason for its treatment of Plaintiff. Accordingly, it is unnecessary to decide whether Defendant's additional arguments have merit,[8] and summary judgment is granted in Defendant's favor.

---

[8] Additionally, though it does not base its holding upon this analysis, the Court is persuaded that at least two of Defendant's other arguments have merit. Casey's and Yogi Liquors appear not to be "similarly situated" to Plaintiff's business (leaving aside the fact that Mr. Shah identified these businesses as "American-owned," rather than white-owned). Casey's was significantly busier and thus merited more attention from Defendant's salesperson, and was easier for him to service because it was better organized. (Doc. 17 at 11-12). Yogi Liquors was a liquor store, and thus is not directly comparable to a convenience store, as Mr. Shah admitted in his deposition. (Def. Ex. 2 at 249). Plaintiff has presented no evidence that either business had an arrangement with Defendant that was similar to the one Plaintiff had with Defendant, or that they had contracts with Defendant that specified a frequency of delivery. In the absence of such evidence, Plaintiff cannot show that Defendant's allegedly different treatment of those businesses was not based on legitimate differences between their business arrangements.

Defendant is also correct that it cannot be held liable for the actions of Mike Bradley, who was the representative of Monster Energy Drink, not American Bottling. (Doc. 17 at 10). General Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 392 (1982) ("Even if the doctrine of respondeat superior were broadly applicable to suits based on § 1981[,] it would not support the imposition of liability on a defendant based on the acts of a party with whom it had no agency or employment relationship.").

13

### 1. Plaintiff's Membership in a Protected Class

Defendants argue that Plaintiff's claim is actually one of national origin discrimination, rather than racial discrimination, as it alleges that Mr. Shah was born in India, rather than that he is a member of a protected racial group. (Doc. 17 at 22). As is obvious, a person of any race could be born in India, so, on the face of it, Defendant's argument is correct. In addition, by failing to respond to Defendant's Motion for Summary Judgment, Plaintiff has admitted the facts as stated in Defendant's Motion, namely that its "claim for ethnic origin discrimination is based on [Mr. Shah's] belief that he was discriminated against because he is from another country and that [Mihir's] . . . comparators were 'American-owned' businesses." (Doc. 17 at 8).

On the other hand, when questioned in his deposition about what being "from another country" meant, Mr. Shah clearly stated that he felt "they tried to discriminate me for -- with the race. …I'm not from like white skin."[9] (Def. Ex. 2 at 126). In addition, Mr. Shah appears to have used nationality and ethnic origin interchangeably in his deposition, i.e., when asked "Do you know the ethnic origin of the owner [of a neighboring gas station]?," Mr. Shah replied, "I believe American;"

---

[9] Defendant's argument that Indians are anthropologically "Caucasian" is unavailing. In <u>Pourghoraishi v. Flying J, Inc.</u>, the Seventh Circuit determined that, though "anthropologists do indeed classify Iranians into the perhaps antiquated category of 'Caucasians,'" the Iranian plaintiff could raise a claim for racial discrimination under § 1981. 449 F.3d 751, 757 (7th Cir. 2006). Similarly, though it may be true that the people of India are, or were, considered "Caucasian" in older anthropological groupings, § 1981 does not rely on "definitions of race that require distinctive physiognomy, or strict adherence to taxonomical, biological or anthropological definitions." <u>Id</u>.

Mr. Shah also testified, when asked by his attorney, that, when he was "talking about Americans, [he was] talking about white Americans." (Def. Ex. 2 at 191, 225). Given Mr. Shah's statement about his skin color, the frequent overlap of terms describing race and national origin, and the usage of the word "race" when § 1981 was drafted,[10] the Court will construe Plaintiff's claim, though perhaps inartfully presented, as one of racial discrimination within the purview of § 1981. Abdullahi

---

[10]   Judge Posner explained the complicated overlap of race and nationality, and its implications for § 1981 claims in Abdullahi v. Prada USA Corp., in which an Iranian-born § 1981 plaintiff alleged only "national origin" discrimination:

> Race, nationality, and ethnicity are sometimes correlated, but they are not synonyms. A racial group as the term is generally used in the United States today is a group having a common ancestry and distinct physical traits. The largest groups are whites, blacks, and East Asians. Iran is a country, not a race, and an "Iranian" is simply a native of Iran. Iranians and other Central Asians are generally regarded as "white," whatever their actual skin color; many Indians, for example, are dark. Some Central Asians are indistinguishable in appearance from Europeans, or from Americans whose ancestors came from Europe, while others (besides Indians), for example Saudi Arabians, would rarely be mistaken for Europeans. Some Iranians, especially if they speak English with an Iranian accent, might, though not dark-skinned, strike some Americans as sufficiently different looking and sounding from the average American of European ancestry to provoke the kind of hostility associated with racism. . . .
> That would be a loose sense of the word "race," but the loose sense is the right one to impute to a race statute passed in 1866. [I]t was routine then to refer to nationalities or ethnic groups as races-the "German race," for example. "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory."

520 F.3d 710, 712 (7th Cir. 2008) (emphasis added) (quoting Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987)). See also Pourghoraishi, 449 F.3d at 756-57.

15

v. Prada USA Corp., 520 F.3d 710, 712 (7th Cir. 2008); Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 756-57 (7th Cir. 2006).

### 2. Existence of a contract

Defendant argues that, during the relevant time period, there was no contract, written or oral, between Plaintiff and itself on which to base § 1981 liability. (Doc. 17 at 23-24). Initially, the Court notes that Defendants correctly argued in their Motion to Dismiss and for a More Definite Statement that Plaintiff's complaint was vague as to whether Plaintiff claimed a violation of § 1981 resulting from a refusal to contract or a failure to perform on an existing contract. (Docs. 7, 10, and 12). Plaintiff's Response to Defendant's Motion indicated that the claim is based upon a refusal to perform its existing contract with Mr. Shah; this was recognized by the Court in its March 14, 2009 Order. (Doc. 10 at 5-6, 9; Doc. 12 at 8). Therefore, the Court will proceed on the assumption that Plaintiff's claim asserts that Defendant refused to perform on an existing contract.[11]

Again, Plaintiff has admitted all the factual statements contained in Defendant's Motion. Mr. Shah's previous business, C.J. of Illinois, had a written pricing contract with Defendant between May 2004 and May 2005, which did not specify any frequency or schedule of sales calls or deliveries. After Mr. Shah

---

[11] Even if Plaintiff were claiming that Defendant discriminatorily refused to enter into a contract with it that would have obligated Defendant to make sales calls or deliveries with a certain frequency, Plaintiff has not shown any evidence that Defendant was willing to enter such contracts with it proffered comparator businesses; indeed, Plaintiff has not put forth any information as to the relationships between these businesses and Defendant. Such a showing would be necessary for Plaintiff to make out its prima facie case under McDonnell Douglas and withstand summary judgment.

16

incorporated Mihir, Inc., in October of 2005, he did not sign any contracts on its behalf with Defendant. Thus, there was no written contract between Plaintiff and Defendant during the relevant time period. In addition, there is no evidence that there was an oral contract as to a sales-call or delivery schedule between Plaintiff and Defendant during the relevant time period.

Of course, a contract can also arise by implication from the parties' conduct.[12] In Illinois, such implied-in-fact contracts require that the party alleging such a contract prove that the "essential elements of a contract" -- offer, acceptance, and consideration -- exist, as "conveyed by implication from the parties' conduct or actions." Brody v. Finch University of Health Sciences/The Chicago Medical School, 298 Ill.App.3d 146, 155, 698 N.E.2d 257, 265 (Ill.App.Ct. 1998); 12 ILL. LAW & PRAC. CONTRACTS § 10 ("for an implied in fact contract, there must be an expression on the part of the promisor that shows an intention to be bound").

Plaintiff has not made the argument that there was an implied-in-fact contract between itself and Defendant, and, even drawing all reasonable inferences in Plaintiff's favor, there is no evidence in this record that would identify whether Defendant's conduct revealed an intent to be bound to such terms. Given the fact

---

[12]    Indeed, there may have been an implied contract as to price and possibly cooler space for the beverages sold by Defendant to Plaintiff throughout the period in question. Mr. Shah signed a pricing contract on behalf of C.J. of Illinois, and, after its expiration, the C.J. of Illinois and Defendant appear to have had no disputes as to pricing. In addition, though no written contract was ever signed, Mr. DeLashmit delivered a price sheet to Plaintiff and Defendant adhered to its terms. However, price and cooler space terms are not at issue in this case; Plaintiff asserts that the § 1981 violation arose because of Defendant's failure to deliver product on a regular basis, specifically during the spring and summer of 2006, not because Defendant discriminated against it on the basis of price or terms relating to cooler space.

17

that Defendant did not incorporate a sales-call or delivery schedule into the C.J. of Illinois pricing contract, and Mr. Shah's deposition testimony that indicates he believed Mihir and Defendant to be operating under a similar price-only contract, it appears that the parties never contemplated a contract term -- written, oral, or implied -- as to a sales-call or delivery schedule.  Plaintiff has shown no action or expression on the part of Defendant that shows an intent to be bound, and the Court can find none in the record.

In responding to a Motion for Summary Judgment, the non-moving party may not simply rest on its pleadings, but must come forward with evidence that shows there is a genuine issue of material fact.  Lewis v. CITGO Petroleum Corp., 561 F.3d 698, 702 (7th Cir. 2009) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).  In addition, it is not the court's function to search the record to find evidence to defeat a motion for summary judgment.  Instead, the court relies on the non-moving party to identify the evidence which creates an issue of triable fact.  Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996).  Defendant asserts that there was no contract, and has shown that there was no written or oral contract as to a sales-call and delivery schedule during the relevant time period.  The Court finds, and the Plaintiff has shown, no evidence that there was any existing contract, express or implied, during the relevant period on which to base a § 1981 claim for refusal to perform on an existing contract, and no reasonable jury could find otherwise on the record before the Court.

### 3. Defendant's legitimate, non-discriminatory reason is not pretext for discrimination

Defendant also asserts that Mr. DeLashmit had a legitimate, non-discriminatory reason for his decision to not visit Plaintiff's store during the relevant time period: Because Plaintiff's store was highly disorganized and it took him much longer to service that store than those of his other customers,[13] he stopped visiting the store. (Doc. 17 at 11-13). As Plaintiff has admitted the statements of fact contained in Defendant's Motion for Summary Judgment, for purposes of this analysis, it is the case that "the Plaintiff's store was very disorganized. The walk-in cooler was often in disarray with product and inventory located all over the floor….[I]t was difficult to walk in the cooler much less to find the particular product, make a count, organize the product and place an order." (Doc. 17 at 11). This opinion was shared by Mr. Bersell, Mr. DeLashmit, and Mr. Grainger. (Doc. 17 at 11-13; Def. Exs. 6, 9, and 10).

"The pretext analysis focuses on whether the reason was honest and not whether it was accurate or wise." Barricks v. Eli Lilly & Co., 481 F.3d 556, 560 (7th Cir. 2007). It is not at issue whether Mr. DeLashmit's perception that Plaintiff's store was disorganized and difficult to service was accurate, or whether he should have allowed the fact that Plaintiff's store was disorganized and thus took him longer to service to influence his choices about which stores to visit. Plaintiff has not put forward any evidence tending to show that this given reason is untrue; indeed, by failing to respond, Plaintiff has admitted that this reason is true. In

---

[13] As compared with stores of similar volume, which took 15-20 minutes to service, Plaintiff's store took over an hour to service. (Doc. 17 at 11-12).

order to oppose a motion for summary judgment, a party must "present definite, competent evidence to rebut the motion." <u>Smith on Behalf of Smith v. Severn</u>, 129 F.3d 419, 427 (7th Cir. 1997). Here, Plaintiff has presented no evidence to rebut the legitimate, nondiscriminatory reason given by Defendant. Therefore, even if Plaintiff could have made out its prima facie case under <u>McDonnell Douglas</u>, Plaintiff cannot show that Defendant's legitimate, non-discriminatory reason for its treatment of Plaintiff was a pretext for discrimination.

## CONCLUSION

Because by its late filing Plaintiff has violated both the Local Rules of this District and a direct warning as to deadlines from this Court, Plaintiff's Motion for Leave to File Response to Defendant's Motion for Summary Judgment is DENIED, and Plaintiff may not file its untimely Response to Defendant's Motion for Summary Judgment.

As Plaintiff has failed to make out its prima facie case under <u>McDonnell Douglas</u>, because there was no contract between itself and Defendant, and as it could not show that Defendant's given legitimate, non-discriminatory reason was a pretext for discrimination, Defendant's Motion for Summary Judgment is GRANTED.

CASE TERMINATED.

Entered this <u>2nd</u> day of October, 2009.

                                                s/ Joe B. McDade
                                                JOE BILLY McDADE
                                                United States District Judge